CAPITAL ELECTRIC POWER ASS'N *v.* FRANKS.

(In Banc.   Dec. 10, 1945.   Suggestions of Error Overruled Jan. 28, 1946.)

[23 So. (2d) 922.   No. 35976.]

**W. E. Gore** and **John G. Burkett**, both of Jackson, for appellant.

228

H. C. Stringer and L. L. Shelton, both of Jackson, for appellee.

**McGehee, J.,** delivered the opinion of the court.

This appeal is from a decree that perpetuated a mandatory injunction which required the appellant to resume the furnishing of electric current to the place of business and home of the appellee on U. S. Highway 51, about twelve miles south of the City of Jackson. The motion to dissolve the temporary injunction which had successfully compelled the service to be resumed was heard on bill of complaint, answer, cross-bill and oral proof ·at a final hearing.

The appellant is one of the many corporations engaged in this state in supplying electric current to its members, and not to the general public, under the authority of the Federal Agency known as the Rural Electrical Authority, and it operates on a non-profit basis. Each member of the Association is required to pay a membership fee of $5, and to pay for such electric current as he may use.

The rates are fixed by the Association at such an amount as is deemed sufficient to take care of the annual installments on a loan from the Federal Government, interest and operating expenses, and each member agrees, as a condition of continued membership, that he will comply with the provisions of the charter and by-laws, and rules and regulations, of the Association as to paying for such electric power as may be furnished to him, but a member is not in any manner personally liable for the debts of the Association.

At the beginning of the contractual relations between the Association and one of its members, their agreement is evidenced by a written contract whereby the member agrees to pay monthly the rates that are fixed by the board of directors, and that he will comply with the charter and by-laws of the Association, and such rules and regulations as may from time to time be adopted by it. If the member complies with the terms of the contract in the foregoing particulars, the Association is obligated to continue the electric service in force for one year, and thereafter until cancelled by at least thirty days written notice given by either party to the other. But, of course, the Association is not obligated to furnish the service for the period of one year or longer unless the member shall have paid for the service rendered when the compensation therefor shall become due and payable. Aside from the provisions of such contract, one of which was entered into by the parties in the instant case, the Association has stipulated in writing on each monthly bill rendered that it "Reserves the right to discontinue service at any time for non-payment of arrears."

. The proof on behalf of the appellant shows that on June 7, 1944, the appellee moved into the place of business and residence formerly, occupied by one Itell at the location hereinbefore mentioned. Thereupon, a meter was installed to register the electric current to be furnished to him and there was begun the contractual relation hereinabove set forth. Electric current was thereafter sup-

plied to the store, filling station and residence of the appellee.

On or about July 15, 1944, the meter was read by an employee of the Association for the period ending on that date, and the reading disclosed that only thirty-five kilowatts had been used, although a normal use under the circumstances would have been approximately five times that amount. At the time of the reading of said meter, the employee of the Association discovered that the same was not then registering although it was in good condition and the lights were burning; that upon throwing the switch, which should have cut off the lights, they continued to burn; that thereupon an employee of the appellee pointed out to the meter reader where the line had been tapped so as to detour the current around the meter; that the inside wall of the building had been newly painted and that there were dirty finger smudges on the paint around a bracket under which the device was later found to have been connected; that this employee of the Association did not then make an examination but reported it to his general manager, and that the general manager visited the appellee's place of business and ascertained the manner in which the current was being detoured around the meter; that he did not remove this contrivance, which is referred to in the evidence as "jumper," for the reason that it could be readily reinstalled by anyone desiring to do so; that the general manager thereupon caused a check-meter to be installed on a pole off the premises of the appellee; and that on July 19, 1944, the general manager wrote to the appellee the following letter: "We enclose our bill covering estimated unauthorized service which you received during the period closing July 15, 1944. This service was tapped before being metered, and was inspected by the writer. We have set a Check Meter on this service, and your billing hereafter will be as per reading on this Meter. It will be necessary for you to make payment on this enclosed bill, or your service will be discontinued."

That upon receipt of the foregoing letter, the appellee paid this $5 extra charge, and continued to pay each month the bills rendered according to the check-meter until March 15, 1945, knowing that in the meantime the employees of the Association were not reading the meter on the wall inside his place of business, and thereby acquiesced in, and ratified the action of, the Association in charging for the current furnished as registered by the check-meter.

That upon receipt by the appellee of the bill for the month beginning February 15 and ending March 15, 1945, and which was for an amount much in excess of previous bills, due to the fact that during February the appellee had installed several chicken brooders in which he was supplying the necessary heat to approximately fifteen hundred little chickens, he refused to pay the bill for that period, complaining that the check-meter was registering more than the meter on the wall in his place of business by a difference of about three hundred kilowatts. That thereupon the general manager of the Association caused the check-meter to be reread to ascertain if any mistake had been made and found it to be registering correctly. That the appellee still declined to pay the bill after consulting his attorney in regard thereto. That thereupon the general manager went to the appellee's place of business and gave him the choice of either paying the bill or having the service discontinued. Appellee continued such refusal to pay, and with the result that the service was discontinued on March 29, 1945.

That shortly thereafter the temporary mandatory injunction was issued whereby the Association was commanded and required to reinstate the service and to install a meter on the premises of the appellee. That this was promptly done, and with the result that for a period of time thereafter this new meter, which was accessible to the appellee, registered only the use of forty-nine kilowatts of power, whereas it should have shown to register several hundred, according to the check-meter which was shown without dispute to be giving a correct registra-

tion. That thereupon the general manager moved the new meter to another place on the premises of the appellee, but where it was no longer accessible to him, when it began to register the correct amount in accordance with the registration on the check-meter.

The foregoing proof on behalf of the appellant was disputed by the testimony on behalf of the appellee to the extent that his employee denied having pointed out to the representative of the Association the place where the line was being tapped and the current detoured around the meter, and to the further extent that the appellee denied any responsibility in connection with this contrivance, and said that the meter on the wall in his place of business was registering at all times whenever he looked at it, and claimed that although the main line had been uninsulated in two places and then the exposed ends of some small wires had been connected thereto, he removed the same when he took possession of the building. However, he did not call this attempt of some one to tap the wires to the attention of the Association at the time the meter was first installed.

He also denied having received the letter from the Association hereinbefore quoted, but he later admitted receiving a letter, which he did not produce, in connection with the bill for the extra charge of $5 mentioned in the quoted letter.

Under our view of the case, the appellant was entitled to require payment for the current according to a correct registration without regard to who was responsible for the current being detoured around the meter which was on the wall in the store building, since it appears to have been conclusively shown that for some reason the Association could not get a correct registration of the current while either this meter or the one installed under the writ of injunction was accessible to whoever was interfering with the wiring on the premises.

It was not until after the temporary mandatory injunction was obtained that the appellee made a tender, either legal or otherwise, of the amount that he admitted or

claimed to be actually due. At any rate, we are of the opinion that the mandatory injunction should have been dissolved and that a decree should be rendered here accordingly.

The decree of the trial court erroneously relieves the appellee of paying any amount for the current used by him from February 15 to March 15, 1945. Up to the date of the trial the proof discloses that the appellee owed the sum of $70.14, and the correctness of the claim of the appellant for actual damages other than its claim for attorney's fees upon a dissolution of the injunction, and amounting to the total sum of $130.94, including the $70.14 demanded, is not disputed, except as to that part of the $70.14 which was in dispute when the suit was filed.

From the foregoing conclusions it follows that the appellant is entitled to a decree here dissolving the injunction and an award of $130.14 for current furnished, and as damages sustained to the date of the trial. That the appellee is not entitled to relief under his cross-appeal, for the reason that any damages that he may have sustained in the loss of chickens and the operation of his business due to the heat and lights being discontinued, on account of the non-payment of a past due bill for current furnished him is not recoverable, since the defendant association reserved the right to take such action under these circumstances.

No attorney's fees are recoverable by the appellant, for the reason that the suit was one both for injunctive relief and the recovery of damages on account of the alleged loss of several hundred of the young chickens, and interference with the operation of the store and filling station, and the motion to dissolve the injunction was not heard in advance of the trial on the merits, the record showing that the entire cause was heard on the merits and that the same was treated as a final hearing. "It is thoroughly settled that, under the general statutes—other than those fixing the five per centum as damages—solicitors' fees are allowable as part of the damages for procuring the dissolution of an injunction; but such fees are

not allowable for defending the suit on its merits when the injunction was a mere incident thereto, or for obtaining affirmative relief therein by means of a cross-bill. If the suit be for an injunction alone and for no other relief solicitor's fees for dissolution must be allowed, but where the injunction is sued out merely in aid of or as auxiliary to the principal equitable relief sought and the entire case is heard finally, and not separately on any preliminary motion to dissolve, solicitor's fees should not be allowed." Griffith's Miss. Chancery Practice, Sec. 464, p. 491.

Reversed and judgment here for the appellant on direct appeal; affirmed on cross-appeal.